Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50199 | **DATE** | 10/12/2001 |
| **CASE TITLE** | Hamilton Sundstrand Corp. vs. Robert M. Healey | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . For the reasons stated in the attached Memorandum Opinion and Order, the IDOL's motion to dismiss is granted in part and denied in part; the IDOL is dismissed from this case. The court schedules a telephonic conference for October 18, 2001 at 11:30 a.m. to determine how to proceed further. The call is to be initiated by plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| X | Notices faxed by judge's staff. | OCT 12 2001 date docketed | 12 |
| | Notified counsel by telephone. | | |
| X | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | OCT 12 2001 date mailed notice | |
| /SEC | courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

HAMILTON SUNDSTRAND CORPORATION, )
)
      Plaintiff, )
) No. 01 C 50199
v. )
)
ROBERT M. HEALEY, in his official )
capacity as Director, Illinois )
Department of Labor, and )
ILLINOIS DEPARTMENT OF LABOR, )
)
      Defendants. )

MEMORANDUM OPINION AND ORDER

I. Introduction

On July 3, 2001, plaintiff Hamilton Sundstrand Corporation ("Hamilton Sundstrand") filed an amended complaint against Robert Healey, in his official capacity as Director of the Illinois Department of Labor ("the IDOL") and against the IDOL. In its complaint, Hamilton Sundstrand seeks a declaration pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201, that the IDOL lacks jurisdiction over forty wage claims filed pursuant to the Illinois Wage Payment and Collection Act ("the Act"), 820 ILL. COMP. STAT. 115/1 et seq., and currently pending before the IDOL against Hamilton Sundstrand. Hamilton Sundstrand argues the IDOL is preempted from adjudicating the wage claims because of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The IDOL has filed a motion to dismiss Hamilton Sundstrand's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing: (1) the controversy is not ripe for review; and, (2) even if the controversy is ripe for

review, ERISA does not preempt the IDOL from adjudicating the wage claims at issue.

## II. Facts[1]

On or around June 10, 1999, Sundstrand Corporation merged with Hamilton Standard to form Hamilton Sundstrand Corporation, a division of United Technologies Corporation. (Am. Compl. ¶ 7) Following the merger, Hamilton Sundstrand outsourced a portion of its Information Technology Department ("IT Department"). (Id. ¶ 8) Specifically, on October 25, 1999, United Technologies entered an agreement with Computer Sciences Corporation ("Computer Sciences"), wherein Computer Sciences agreed to provide IT services beginning on January 1, 2000. (Id. ¶ 9) The agreement required Computer Sciences to extend employment offers to ninety current Hamilton Sundstrand employees working in the IT Department. (Id. ¶ 10) Pursuant to the agreement, on November 24, 1999, Computer Sciences extended employment offers to these ninety Hamilton Sundstrand employees, most of whom accepted and became Computer Science employees, effective January 1, 2000. (Id. ¶¶ 11, 13)

From at least June 1999, Hamilton Sundstrand paid severance pay to employees who qualified under the Hamilton Sundstrand

---

[1] In considering a motion to dismiss, all well-pleaded factual allegations in plaintiff's complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. Help At Home, Inc. v. Medical Capital, LLC, 260 F.3d 748, 752 (7th Cir. 2001). The court will grant a motion to dismiss if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief. Id.

2

Corporation Severance Pay Plan ("the Plan"). (Id. ¶ 14; Exh. C) Hamilton Sundstrand was the Plan Administrator with sole discretion to determine eligibility and payment of severance under the Plan. (Am. Compl. ¶ 15) Benefits under the Plan were paid from the general assets of Hamilton Sundstrand. (Id.) The Plan covered Hamilton Sundstrand employees in many states. The Plan states that a Hamilton Sundstrand employee is eligible to receive severance pay if the employee is full-time and active and employment is terminated due to a layoff. (Id. ¶ 17; Exh. C) However, the Plan specifically denies severance pay if a Hamilton Sundstrand employee's separation from employment is due to a sale of a unit of Hamilton Sundstrand, in which the purchaser offers the Hamilton Sundstrand employee employment. (Am. Compl. ¶ 18; Exh. C) On December 22, 1999, Hamilton Sundstrand amended the Plan to "clarify that there are no severance payments due when the Company terminates employees because it is outsourcing a support or business function and the employees in those positions are offered employment with the organization to which the function is outsourced." (Am. Compl. ¶ 19; Exh. D)

Between June 20 and July 25, 2000, forty Computer Science employees, who had formerly been Hamilton Sundstrand employees in the IT Department, filed wage claims with the IDOL, alleging entitlement to severance pay under the Plan. (Am. Compl. ¶ 27) Although the IDOL initially found that it was precluded from investigating the claims, finding Hamilton Sundstrand's Plan was an ERISA plan, it later reversed its position on April 30, 2001.

3

(Id. ¶¶ 29, 35; Exhs. H, J)  The IDOL subsequently attempted to investigate the claims at issue, leading to the instant lawsuit.

### III. **Analysis**

**A.   Ripeness**

The ripeness requirement is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. Abbott Lab. v. Gardner, 387 U.S. 136, 148 (1967).  In deciding whether an agency's decision is ripe for judicial review, the court examines: (1) whether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and, (3) whether the courts would benefit from further factual development of the issues presented.  Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998).

Here, the court finds the present dispute is ripe for judicial review.  The IDOL stands poised to launch an investigation into Hamilton Sundstrand's severance pay program, based on forty wage claims currently pending before it.  The IDOL attempts to minimize the impact of its investigation, stating each of the forty interviews will likely last only fifteen minutes.  However, this views the investigation in a vacuum.  In

4

investigating wage claims under the Act, the IDOL has the power to administer oaths, subpoena and examine witnesses, issue subpoenas duces tecum requiring the production of documents "as may be evidence of any matter under inquiry and to examine and inspect the same as may relate to the question in dispute." 820 ILL. COMP. STAT. 115/11. A failure to comply with such requests could result in findings of contempt, as well as civil and/or criminal actions. Id.; Miller v. Kiefer Specialty Flooring, Inc., 739 N.E.2d 982 (Ill. App. Ct. 2000). Given the number of claimants and the IDOL's broad investigatory powers, a delayed review would cause hardship to Hamilton Sundstrand.

As for the second factor, the court has already interfered with the IDOL's investigation, in that the IDOL has agreed to suspend its investigation pending this court's determination of the issues.[2] Judicial intervention is not inappropriate because the IDOL has already definitively ruled that ERISA does not preempt its authority in construing Hamilton Sundstrand's severance pay program. (Am. Compl. Exh. J) The IDOL argues that it has not yet ruled on whether Hamilton Sundstrand has violated the Act and the present controversy could be avoided, depending on the IDOL's findings. However, whether the IDOL finds Hamilton Sundstrand has violated the Act is irrelevant to the present suit. It is more efficient for the court to weigh in on the

---

[2] The court appreciates the IDOL's willingness to accommodate the court by agreeing to temporarily suspend its investigation.

5

issue of ERISA preemption at this stage, rather than wait for the IDOL to complete its investigation.

As for the third issue, whether ERISA preempts the IDOL's action is a purely legal issue. Facts impact the analysis but the record is fully developed here as it pertains to the preemption issue. The court believes the issues presented are appropriate for judicial resolution in this case.

**B. ERISA Preemption**

ERISA's preemption provision states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). ERISA defines "employee benefit plans" to include severance benefits. 29 U.S.C. §§ 186(c), 1002(1)(B); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 7 n.5 (1987) (§ 1002(1)(B) defined to include, via 29 U.S.C. § 186(c), money paid by an employer to a trust fund to pay for severance benefits). However, it is apparent not all severance benefits qualify as an ERISA plan. See, e.g., Fort Halifax, 482 U.S. at 8. In fact, the precise coverage of ERISA is not clearly set forth in the Act. Massachusetts v. Morash, 490 U.S. 107, 113 (1989). An ERISA plan requires an ongoing administrative scheme and its terms must be reasonably ascertainable. Cvelbar v. CBI Ill. Inc., 106 F.3d 1368, 1374 (7th Cir.), cert. denied, 522 U.S. 812 (1997), abrogated on other grounds by International Union of Operating Eng'rs v. Rabine, 161 F.3d 427 (7th Cir. 1998).

In Fort Halifax, the Supreme Court addressed whether a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing was preempted by ERISA. The Supreme Court held the Maine statute was not preempted. Fort Halifax, 482 U.S. at 6. The Fort Halifax Court stated that preemption of the Maine statute would not further the purposes of ERISA preemption. Id. at 8. In providing for ERISA preemption, Congress intended to protect plan participants by eliminating the threat of conflicting and inconsistent state and local regulation of employee benefit plans. Id. at 9. This was in keeping with the administrative realities of employee benefit plans. Id. The Supreme Court stated:

> An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursements of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States.

Id.

Thus, Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. Id. at 11. This concern arises, however, only when the benefits by nature require an ongoing administrative program to meet the employer's obligation. Id.

7

The Maine statute, according to the Supreme Court, did not require such an ongoing administrative scheme but, rather, involved a one-time, lump-sum payment triggered by a single event. Id. at 12. Under the statute, "the employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control." Id.

The court agrees with Hamilton Sundstrand that its severance pay plan is the antithesis of the one-time, lump-sum severance payment at issue in Fort Halifax. Taking as true the allegations in the amended complaint, Hamilton Sundstrand's severance pay plan involves an ongoing administrative scheme which has been in existence since June 1999. The Plan Administrator has the sole discretion to determine who is eligible for severance benefits, which is a key factor in determining the existence of an ongoing scheme. See Cvelbar, 106 F.3d at 1377. Therefore, the Plan Administrator must determine the eligibility of claimants, which involves a degree of discretion under Hamilton Sundstrand's plan. For example, the Plan lists events which trigger coverage and events which do not trigger coverage. (Am. Compl. ¶¶ 17-18) The Plan Administrator must also calculate benefit levels and make disbursements pursuant to a formula based on length of service and base weekly salary, including any shift premium. (Am. Compl. Exh. C) Although under Hamilton Sundstrand's plan it is not clear whether eligible employees receive severance payments in a lump sum or on a periodic basis, this is irrelevant. See Fort

Halifax, 482 U.S. at 15 n.9. It is clear that under its plan, Hamilton Sundstrand has a continuing obligation to pay out benefits on an ongoing basis, necessitating an administrative scheme to process those claims; it is this ongoing obligation that is important. See id. In short, Hamilton Sundstrand's plan is the type of uniform administrative scheme with set, standard procedures for processing claims and disbursing benefits to which ERISA applies. See Fort Halifax, 482 U.S. at 9; see also Collins v. Ralston Purina Co., 147 F.3d 592, 595-97 (7th Cir. 1998) (employer's severance benefits plan was part of ongoing administrative scheme and subject to ERISA); Cvelbar, 106 F.3d at 1374-75 (severance payments at issue constituted an ERISA plan).[3]

Moreover, applying ERISA to Hamilton Sundstrand's severance pay plan would serve the statute's purpose of eliminating the threat of conflicting or inconsistent state or local regulations. Hamilton Sundstrand's plan covers employees in numerous states, including Illinois, Connecticut, Indiana, Colorado, Pennsylvania, Massachusetts, Wisconsin, Arizona, Nebraska, and California. (Am. Compl. ¶ 16) Subjecting the plan to each state's wage laws would subvert ERISA's purposes. See Fort Halifax, 482 U.S. at 9.

Hamilton Sundstrand funds its severance benefits out of its general assets (Am. Compl. ¶ 15), and the IDOL argues this fact alone means the severance pay plan at issue is not an ERISA plan.

---

[3] Hamilton Sundstrand also treats its severance pay plan as an ERISA plan. For example, it submits the proper government ERISA forms and publishes a summary plan description in accordance with federal regulations. (Am. Compl. ¶¶ 25-26)

9

See, e.g., California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316, 326 (1997) (employee benefit program not funded through a separate fund is not an ERISA plan, whereas a joint apprenticeship committee, defrayed out of moneys placed into a separate fund, is; the existence of that fund triggers ERISA coverage); Morash, 490 U.S. at 117-18 (payroll practices, including the payment of vacation benefits out of an employer's general assets rather than from a trust fund, are not employee welfare benefit plans within ERISA's meaning).

The Supreme Court explicitly rejected this argument in Fort Halifax and implicitly rejected the argument in Morash, as has the Court of Appeals for the Seventh Circuit. See Cvelbar, 106 F.3d at 1378 (payment of severance benefits out of general funds does not remove benefits from ERISA's ambit but, rather, satisfies the requirement of an ascertainable source of funding); Diak v. Dwyer, Costello & Knox, PC, 33 F.3d 809, 812-13 (7th Cir. 1994) (employer should not be able to evade ERISA's requirements merely by paying benefits out of general assets); see also Williams v. Wright, 927 F.2d 1540, 1544 (11th Cir. 1991) (payment of benefits out of employer's general assets does not affect threshold question of ERISA coverage).

In Fort Halifax, 482 U.S. at 17-18, the Supreme Court addressed whether the funded or unfunded nature of severance benefits would change its answer, and said no. The Supreme Court noted two lower court decisions, Holland v. Burlington Indus.,

10

Inc., 772 F.2d 1140 (4th Cir. 1985), summarily aff'd sub nom. Brooks v. Burlington Indus., Inc., 477 U.S. 901, cert. denied sub nom. Slack v. Burlington Indus., Inc., 477 U.S. 903 (1986), and Gilbert v. Burlington Indus., Inc., 765 F.2d 320 (2d Cir. 1985), summarily aff'd, 477 U.S. 901 (1986), wherein the Courts of Appeals for the Fourth and Second Circuits, respectively, specifically addressed the issue of whether severance pay plans funded from general assets, rather than from special trusts, were, nevertheless, ERISA plans. Both Courts of Appeals held such severance pay plans qualified as employee welfare benefit plans under ERISA. The Fort Halifax Court found the holdings of both cases were "completely consistent" with its analysis. Fort Halifax, 482 U.S. at 17.

The Supreme Court reinforced this view in Morash, 490 U.S. at 110, wherein it addressed whether ERISA preempted a Massachusetts statute governing the payment of wages to discharged employees for their unused vacation time. The Supreme Court held the policy to pay employees for unused vacation time did not constitute an employee welfare benefit plan. Id. at 114. In so holding, the Supreme Court stated that, in enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. Id. at 115. "To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated

11

through poor management by the plan administrator." Id. The Supreme Court reasoned that because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address. Id.

In contrast, according to the Supreme Court, plans to provide medical, sickness, accident, disability, and death benefits, training programs, day care centers, scholarship funds, and legal services are distinguishable in that they accumulate over a period of time and are payable only upon the occurrence of a contingency outside the employee's control. Id. at 115-16. "Thus, for example, plans to pay employees severance benefits, which are payable *only* upon termination of employment, are employee welfare benefit plans within the meaning of the Act." Id. at 116 (emphasis in original). Thus, the Supreme Court explicitly rejected the IDOL's argument in both Fort Halifax and Morash, and the court disagrees with the IDOL that more recent Supreme Court decisions have altered its stated position.

## C.  **Subject Matter Jurisdiction**

Although neither party has raised the issue, the court must be vigilant about the existence of subject matter jurisdiction and may raise the issue on its own. See Weaver v. Hollywood Casino-Aurora, Inc., 255 F.3d 379, 381 (7th Cir. 2001) (court has duty to satisfy itself of its own jurisdiction and may raise the issue on its own even if the parties do not). Here, Hamilton Sundstrand is seeking a declaratory judgment that a state law is

12

preempted by ERISA. The Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of subject matter jurisdiction. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 818 (7th Cir. 2000), cert. denied, 121 S. Ct. 883 (2001). It allows suits for declaratory judgment where federal jurisdiction would exist in a coercive suit brought by the declaratory judgment defendant. Id. That is, a complaint seeking a declaratory judgment is tested, for purposes of the well-pleaded complaint rule, as if the declaratory judgment defendant had initiated a lawsuit against the declaratory judgment plaintiff. Fleet Bank, Nat'l Ass'n v. Burke, 160 F.3d 883, 886 (2d Cir. 1998), cert. denied, 527 U.S. 1004 (1999). Under this test, Hamilton Sundstrand's complaint would fail, because the IDOL would be suing it pursuant to the Act.

Normally, the defensive nature of preemption would not suffice to invoke federal subject matter jurisdiction, unless the preemption claim is based on a federal law that so completely preempts a particular area that any civil complaint is necessarily federal in character. Id. Thus, the question here becomes whether ERISA has so completely preempted the Act as it applies to Hamilton Sundstrand's severance pay plan, so that any civil complaint based on the Act is necessarily federal in character. Under ERISA, section 502(a), see 29 U.S.C. § 1132(a), provides the basis for complete preemption, whereas section 514(a), see id. § 1144(a), provides the basis for conflict preemption. Rice v. Panchal, 65 F.3d 637, 639-40 (7th Cir.

13

1995). Here, it is clear the claimants in the underlying wage claims are alleging the wrongful denial of their severance benefits, which falls within section 502(a). See Rosen v. Washington Nat'l Ins. Co., No. 97 C 5894, 1997 WL 638484, at *6 (N.D. Ill. Oct. 7, 1997). Thus, section 502(a) applies, and this court properly has subject matter jurisdiction.[4]

### IV. Conclusion

For the reasons set forth above, the IDOL's motion to dismiss is granted in part and denied in part; the IDOL is dismissed from this case.

E N T E R :

*/s/ Philip G. Reinhard*
**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: October 12, 2001

---

[4] The IDOL also argues this action is barred against the agency itself under the Eleventh Amendment, and Hamilton Sundstrand has agreed to voluntarily dismiss the IDOL as a defendant. (Resp., p. 1 n.1)

14